**RICHARD D. WILLIAMS (SBN 58640)**
rwilliams@lyttonwilliams.com
**MINA HAKAKIAN (SBN 237666)**
mhakakian@lyttonwilliams.com
**LYTTON & WILLIAMS LLP**
1539 Westwood Blvd., Suite 200
Los Angeles, California 90024
Tel.: (310) 982-2733; Fax: (310) 277-5952

Attorneys for Plaintiff,
**BEVERLY OAKS PHYSICIANS SURGICAL CENTER, LLC**

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

| | |
|---|---|
| **BEVERLY OAKS PHYSICIANS SURGICAL CENTER, LLC,** a California Limited Liability Company<br><br>Plaintiff<br><br>**vs.**<br><br>**BLUE CROSS OF CALIFORNIA,** dba **ANTHEM BLUE CROSS** and related entity names; and **Does 1 through 100**;<br><br>Defendants | **Case No.** 2:17-cv-2341<br><br>**COMPLAINT FOR RECOVERY OF BENEFITS UNDER 29 U.S.C. § 1132 (a)(1)(B) AND REASONABLE ATTORNEY'S FEES AND COSTS UNDER 29 U.S.C. § 1132 (g)(1)** |

Plaintiff, Beverly Oaks Physicians Surgical Center, LLC alleges as follows:

## I. JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the action arises under the laws of the United States, and pursuant to 29 U.S.C. § 1132 (e)(1) because the action seeks to enforce rights under the Employee Retirement Income Security Act ("ERISA"). To the extent this action involves rights, duties and obligations of the parties that do not involve ERISA benefits recovery claims, jurisdiction arises pursuant to 28 U.S.C. § 1367 and principles of supplemental jurisdiction, as any such non-ERISA claims are so related to the ERISA claims in the action that they form a part of the same case and

and controversy under Article III of the United States Constitution.

2. This Court is the proper venue for the action pursuant to 28 U.S.C. § 1391 (b) because a substantial part of the events or omissions giving rise to the claims alleged herein occurred in this Judicial District, and pursuant to 29 U.S.C. § 1132 (e) (2) because this is the Judicial District where the breaches took place, and because the defendants conduct a substantial amount of business in this Judicial District.

## II. THE PARTIES

### A. The Plaintiff

3. Beverly Oaks Physicians Surgical Center, LLC (hereinafter referred to as "Plaintiff" or "Beverly Oaks"), is a California limited liability company located and doing business in the County of Los Angeles, State of California.

4. Beverly Oaks is engaged in the business of operating an ambulatory surgery center located in Sherman Oaks, California. The surgery center operated by Beverly Oaks maintains state of the art medical technology devices and other high quality equipment necessary to carry out specialized surgical procedures for medical patients, some of whom are insured under health benefits plans governed by the Employee Retirement Income Security Act of 1974 ("ERISA").

### B. The Defendant

5. Plaintiff is informed and believes that Defendant Blue Cross of California dba Anthem Blue Cross (hereinafter referred to as "Blue Cross") is a corporation duly organized and existing under the laws of California, with its principal place of business located in Woodland Hills, California, and is authorized to transact, and is transacting, the business of providing health services plans in California.

6. Blue Cross serves as the claims administrator and/or the insurance plan underwriter of employee health benefit plans covered by ERISA (hereinafter referred to a "ERISA Plans" or a "Plan" or "Plans") that provide, among other benefits,

reimbursement for medical expenses incurred by individual Plan participants and beneficiaries covered under the Plans. Plaintiff is informed and believes that Blue Cross performs its claims handling services for a multitude of ERISA Plans, some of which are self-funded, and some of which are funded by Blue Cross acting in its capacity as the insurance underwriter for the Plan. Beverly Oaks is informed and believes that it is the responsibility of Blue Cross, as the claims administrator for each and all of the ERISA Plans involved in this case, to decide which healthcare benefits claims will be paid under the Plan; how much will be paid; and which benefits claims will not be paid - - and thereafter to pay benefits to claimants such as Beverly Oaks directly out of ERISA Plan assets that are within the unfettered control of Blue Cross in the ordinary course of business. In simple terms, Beverly Oaks alleges on information and belief that it was Blue Cross, and not the ERISA Plans themselves, that had the responsibility and actual control to make benefits determinations for the healthcare services claims of Beverly Oaks that give rise to this benefits recovery action.

7. Plaintiff is informed and believes that Blue Cross carries out services and functions as a healthcare benefits claim administrator. Acting with respect to members and their dependents insured either under ERISA Plans or insured through insurance otherwise provided by Blue Cross during the period 2013 through 2017, Blue Cross reviewed and evaluated Plaintiff's benefits claims.

8. Beverly Oaks does not bring this suit against the ERISA Plans for whom Blue Cross acted as administrator or insurer in connection with Beverly Oaks' claims. Plaintiff is informed and believe that Blue Cross, and not the ERISA Plans, exercised actual control over the determination and payment of benefit claims submitted by Beverly Oaks. Plaintiff is further informed and believes that, with respect to the claims in this action, Blue Cross acted as claim review fiduciary, either as a third party administrator of a self funded employer-sponsored group health benefit plan, or as an insurer of such an employer-sponsored ERISA Plan.

9. As is discussed later in this Complaint, Beverly Oaks alleges and contends that Blue Cross acted in an arbitrary and capricious manner by underpricing, undervaluing, underpaying or entirely failing to pay the benefits claims submitted by Beverly Oaks.

**C. <u>The Doe Defendants</u>**

10. The true names and capacities of the Defendants sued herein as DOES are unknown to Plaintiff at this time, and Plaintiff therefore sues such Defendants by fictitious names. Plaintiff is informed and believes that the DOES are those individuals, corporations and/or businesses or other entities that are also in some fashion legally responsible for the actions, events and circumstances complained of herein, and may be financially responsible to Plaintiff for services, as alleged herein. The Complaint will be amended to allege the DOES' true names and capacities when they have been ascertained.

## III. CORE FACTS UNDERLYING BEVERLY OAKS' CLAIMS FOR PAYMENT

11. Beverly Oaks has provided healthcare services to ERISA Plan members and their dependents on numerous occasions where the subject ERISA Plan is administered and/or underwritten by Blue Cross. For some Plan members and dependents Beverly Oaks has provided healthcare services on more than one occasion.

12. The healthcare services events which are the subject of benefits claims were carried out in connection with healthcare benefits plans issued or administered by Blue Cross of California in the name of Anthem Blue Cross or in other dba names or corporate designation names that Blue Cross may have elected to use from time to time. These ERISA Plans typically have some deductible or copay obligation to be paid by the Plan members and dependents, and typically pay an out-of-network provider such as Beverly Oaks something less than 100% of Beverly Oaks' billing amounts. The deductible and copay requirements, and the percentage payable to an

out-of-network provider, are typically set forth in the ERISA Plan documents themselves.

13. When Plan members and/or their dependents came to Blue Cross for medical services they would present medical insurance cards in the name of "Blue Cross", and the relevant insurance contact information on each medical insurance card would direct Beverly Oaks to Blue Cross office locations and telephone numbers.

14. As a condition to the provision of services by Plaintiff, each patient was required to sign an agreement assigning their ERISA Plan rights and benefits to Plaintiff in their entirety. Each such assignment of benefits would provide for Plaintiff to be paid directly for the services provided to the patient, and Plaintiff has received a written assignment of benefits in connection with every outstanding benefits claim event at issue in this action. The assignment agreement would designate Plaintiff in such manner that Plaintiff would stand in the shoes of the members/patients to seek, claim and obtain anything that the member/patient would have been entitled to receive under the applicable healthcare coverage administered and/or underwritten by Blue Cross. A true and correct copy of Beverly Oaks' assignment agreement is attached hereto as Exhibit A.

15. For each claim event at issue in this case, Beverly Oaks' custom and practice was to contact a Blue Cross representative by telephone for benefit eligibility confirmation and member coverage verification prior to performing any healthcare services. The regular practice was that Beverly Oaks' office personnel and the Blue Cross representative would discuss the proposed surgery event by telephone in advance of the services being performed, and in each such telephone communication the Blue Cross representative would advise Beverly Oaks' representative that coverage existed for the patient and that benefits were properly payable to Beverly Oaks as an "out-of-network" provider. The following sets forth in summary form the substance of the telephonic communications between Beverly Oaks' representative

and Blue Cross' representative which occurred prior to services being performed in connection with Beverly Oaks' claims asserted in this case.

(a) For each claim event, Beverly Oaks' representative would call a Blue Cross' claims office on the Blue Cross toll free line set forth on the member identification card presented by the patient.

(b) The answering party would identify himself or herself as a representative of Blue Cross, thereby confirming to Plaintiff that the communication was with the authorized claims administrator for the Plan.

(c) Beverly Oaks was an "out-of-network" provider to the Plan, and accordingly was calling Blue Cross in advance of performing services to ensure in each instance that it would be paid for its services by Blue Cross.

(d) In each claim call, Plaintiff's representative would advise the Blue Cross representative of the identity of the Plan member or dependent; the CPT code for the surgical procedure to be performed (the CPT code is the medical procedure descriptive identifier; CPT means "Current Procedural Terminology"); and that the purpose of the call was to verify the existence of coverage for the patient and the eligibility of Beverly Oaks for payment of benefits as an out-of-network service provider.

(e) The Blue Cross representative would respond by advising Beverly Oaks' representative about the percentage of out-of-network billing covered under the Plan (typically between 50% and 100%); the amount of patient deductible; and whether benefits would in fact be payable to Beverly Oaks based on the CPT code provided. The Blue Cross representative would also advise Plaintiff whether specific pre-authorization for the proposed surgical procedure was required.

(f) After the Blue Cross representative verified that the specified treatment was covered and that Beverly Oaks as an out-of-network provider was

eligible for payment, Plaintiff would perform the procedure for which verification was obtained.

16. Beverly Oaks relied and reasonably relied on the Blue Cross telephonic representations: (a) by providing medical services to the individual patient(s) in response to the Blue Cross statements about its eligibility to receive benefits; and (b) by providing medical services to other Plan members and their dependents on an ongoing basis in reliance upon the Blue Cross repeated representations that the patients were covered and that Beverly Oaks was eligible to receive out-of-network benefits on the benefits payment formulations as stated. But for the advance representations of Blue Cross in setting out the applicable benefits payment formulations, Beverly Oaks would not have provided, or continued to provide, medical services to Plan members and dependents for Plans issued or administered by Blue Cross.

17. Beverly Oaks has billed Blue Cross for services rendered to Plan members and their dependents in connection with each of the claim events at issue in this case. By way of its patient assignments, Beverly Oaks stands in the shoes of its patients where benefits claims are concerned.

18. In connection with each of the claims where services were provided, Beverly Oaks' billings submitted to Blue Cross set forth the date of the service, the nature of the services rendered, the identity of the insured member and/or dependent, the patient date of birth, and the applicable Plan ID number. Each of Beverly Oaks' claim billings set forth all requisite information in standard form terminology with sufficient detail to enable Blue Cross to consider and pay the claim in the ordinary course of business.

19. The charges for healthcare services submitted by Beverly Oaks to Blue Cross were in all instances usual, customary and reasonable, and in accord with Beverly Oaks' charges to non-Medicare patients insured by companies other than Blue Cross. Beverly Oaks' charges for services submitted to Blue Cross were also in

accord with the charges of other medical service providers in the community having similar training or expertise as Beverly Oaks; operating in the same geographic area as Beverly Oaks; and providing healthcare services and facilities comparable to those provided by Beverly Oaks.

20. As discussed hereinbelow, Blue Cross has abused its discretion and acted in an arbitrary and capricious manner by failing and refusing to honor and pay Beverly Oaks' claims in accordance with ERISA requirements, practices and provisions, and Beverly Oaks has suffered resulting damages in an amount to be proven at trial. Exhibit B to this complaint is a summary listing of the benefits claims for which Plaintiff seeks recovery in this action.[1] The summary claim listing prepared as of the date of filing of this complaint (with patient names deleted for privacy purposes) is as follows:

Exhibit B: Summary listing for Blue Cross - - 96 claim events, with aggregate amounts billed of $4,366,926.34 and aggregate amounts paid of $687,901.13.

## IV. USUAL, CUSTOMARY AND REASONABLE RATE FOR HEALTHCARE SERVICES RENDERED ("UCR")

21. As an "out-of-network" healthcare services provider, Beverly Oaks is entitled to receive payment of insurance benefits under each and all of the Plans in this case which were underwritten and/or administered by Blue Cross. One of the reasons why Beverly Oaks contacted a Blue Cross representative by telephone prior to performing its services was to verify in advance that an out-of-network provider such as Beverly Oaks was indeed eligible to receive benefits for services to be performed under each Plan, and in response to each such communication Blue Cross represented that out-of-network benefits were payable.

---

[1/] Plaintiff is still performing services for members/dependents of ERISA Plans administered by Blue Cross, and the summary listing attached hereto will be supplemented and updated to set forth Plaintiff's full and final claim events listing at such time as a complete listing is compiled and verified as of the date of trial.

22. Plaintiff is informed and believes that the standard practice in the healthcare insurance industry is that ERISA Plan members and/or beneficiaries are typically free to decide whether they would prefer to utilize an out-of-network provider or an in-network provider for their healthcare needs. The standard practice in the healthcare industry is that an out-of-network service provider such as Beverly Oaks would expect to receive something less than its full billing rate if the actual rates charged by the service provider are higher than the "usual, customary and reasonable" ("UCR") rate charged by other comparable professionals for the same or similar services in the provider's local community. In the event that Beverly Oaks' billing rate exceeded the UCR rate, a Plan administrator would have a proper basis to apply the lower of actual billed charge amounts or UCR charge amounts for the same or similar services. However, with respect to the benefits claims at issue in this litigation, Beverly Oaks' actual charges billed are one and the same as, or lower than, the usual, customary and reasonable rates charged by comparable surgery center facilities in the geographic area serviced by Beverly Oaks. Accordingly, with respect to Beverly Oaks' claims, there should have been no "repricing" or "UCR rate reduction" where benefit claims were concerned. There is no legitimate basis for repricing to the lower of actual charges or UCR where actual charges and UCR are one and the same, or where actual charges are lower than UCR, and to the extent that Blue Cross undertook to "reprice" Beverly Oaks' claims to comport with illegitimately low or fictional UCR rates, the repricing by Blue Cross was arbitrary and capricious, and constituted an abuse of discretion by Blue Cross in its role as Plan administrator for the Plans involved in this case.[2]

---

2/ Any "repricing" of actual charges submitted by a healthcare services provider such as Plaintiff may only be premised upon validly known and computed "UCR" rates for the same or similar services carried out by comparable facilities in the particular geographic area involved. Repricing may not be premised upon some generalize view held by the Plan administrator about what billing rates in the community "should be" or whether the actual charges billed by a services provider are "too high" in some

23. The "percentage recoverable" for each of Beverly Oaks' charges for medical services rendered in this case will vary depending upon the specific terms and provisions of the Plan involved. Some Plans allow for a 50% payment to out-of-network providers; others 60%; others 70%; and others a full 100% after the patient deductible and out of pocket cost share requirements (if any) are met. Under standard practice in the health insurance industry, this "percentage recoverable" is supposed to be applied by Blue Cross to Plaintiff's billings for medical services on either an "actual charge" or a "usual, customary and reasonable" rate basis, but in the present case Beverly Oaks is informed and believes that Blue Cross did not apply the Plan "percentage recoverable" to either Beverly Oaks' actual charges or to any valid or legitimately computed UCR rate for Beverly Oaks' geographic area. Instead, Beverly Oaks is informed and believes that, in many of the claims at-issue in this case, Blue Cross undertook to "reprice" plaintiff's actual billing amounts in a manner that had no meaningful connection to UCR rates or comparable service providers in Beverly Oaks' community.

## V. BEVERLY OAKS HAS STANDING TO PURSUE CLAIMS UNDER ERISA FOR PAYMENT OF BENEFITS AND ATTORNEY'S FEES

24. ERISA governs all aspects of health and medical benefits under ERISA Plans, and authorizes a civil action to recover unpaid benefits and attorney's fees.

25. Beverly Oaks has standing to sue under ERISA as an assignee of benefits due to Plan members and their dependents. A member or dependent of a member is

---

abstract or subjective sense. Repricing of services provider actual charges to UCR involves a comparison of the actual charges of the provider to the actual charges of other providers in the same geographic area to determine whether a particular provider is overcharging as compared to the charges of peers - - and it is an abuse of discretion for a claims administrator to apply some sort of formula, or computer analytical program, or other such criteria for the purpose of bringing medical services provider actual charges into line with amounts that the claims administrator decides it wants to pay, or is willing to pay, or thinks is the "right amount" that should be paid for a particular claim event. A claims administrator has no legitimate right or authority to "reprice" on any such formulaic basis.

expressly empowered by section 1132 (a) of ERISA to sue for denial of benefits, and nothing in ERISA precludes a Plan member or a dependent of a member from validly assigning its right to benefits. In the event of such an assignment, the assignee (Beverly Oaks in this case) stands in the shoes of the member or dependent with full standing to sue for benefits.

25. Blue Cross in this action is the proper party defendant in an ERISA benefits recovery action. See, *Harris Trust & Sav. Bank v. Salomon, Smith Barney, Inc.,* 530 U.S. 238, 247 (2000); *Cyr v. Reliance Standard Life Ins. Co.,* 647 F. 3d 1202 (9th Cir. 2011).

## VI. BEVERLY OAKS IS DEEMED BY LAW TO HAVE EXHAUSTED ADMINISTRATIVE REMEDIES

26. The applicable claims procedure regulations governing ERISA Plans are set forth in 29 C.F.R. §2560.503.1. This section sets forth the minimum requirements for employee benefit plan procedures pertaining to claims. 29 C.F.R. §2560.503-1 (a).

27. The central obligation set forth in the regulations is that: "Every employee benefit plan shall establish and maintain reasonable procedures governing the filing of benefit claims, notification of benefit determination, and appeal of adverse benefit determination." 29 C.F.R. §2560.503-1 (b). Of particular significance in this case are the regulations dealing with "Manner and Content of Notification of Benefit Determination" set forth in 29 C.F.R. §2560-503-1 (g) (1). That section requires that the plan administrator shall provide a claimant with a written or electronic notification of any adverse benefit determination. The regulations require the following:

> "The notification shall set forth, in a manner calculated to be understood by the claimant –
>
> (i) The specific reason or reasons for the adverse determination;
>
> (ii) reference to the specific plan provisions on which the determination is based;
>
> (iii) a description of any additional material or information necessary

for the claimant to perfect the claim and an explanation of why such material or information is necessary;

(iv) A description of the plan's review procedures and the time limits applicable to such procedures, including a statement of the claimant's right to bring a civil action under section 502(a) of the Act following an adverse benefit determination on review."

28. In most cases, these notification requirements were not met in the present action, and the regulations are specific about the consequence of a failure by Blue Cross to comply with notification requirements. 29 C.F.R. § 2560.503-1 (1) provides:

"1. <u>Failure to Establish and Follow Reasonable Claims Procedure:</u> In the case of the failure of a plan to establish or follow claims procedures consistent with the requirements of this section, a claimant shall be deemed to have exhausted the administrative remedies available under the plan and shall be entitled to pursue any available remedies under section 502(a) of the Act on the basis that the plan has failed to provide a reasonable claims procedure that would yield a decision on the merits of the claim."

29. Beverly Oaks is deemed by law to have exhausted administrative remedies available to it because Blue Cross failed to establish and follow reasonable claims procedures as required by ERISA. Blue Cross herein has routinely failed to process claims submitted by the Plaintiff in a manner consistent or substantially in compliance with ERISA regulation 29 C.F.R. §2560.503.1. Among other things, Blue Cross:

- failed to set out the specific reasons for underpayment of the Beverly Oaks claims in its responses transmitted to Beverly Oaks during the administrative review process;
- failed to reference the specific Plan provisions upon which its underpayment determinations was based;
- failed to give a description of any additional material or information which was needed to pursue and perfect the claims, and an explanation of why such information was necessary;
- despite requests by Beverly Oaks, failed to provide Plan documents, or internal rules, guidance, protocols or other criteria upon which the

underpayment determinations were based;

- failed to state the underpayment determinations in a manner calculated to be understood by Beverly Oaks ;
- failed to provide a reasonable opportunity for full and fair review of the underpayment determinations;
- employed policies designed to unduly hamper the review and appeal of claims submitted by Beverly Oaks;
- acted systematically in a manner which rendered the administrative appeal process a futile and meaningless endeavor.

## VII. BLUE CROSS HAS VIOLATED ITS ERISA DUTIES AND RESPONSIBILITIES IN THE FOLLOWING MATERIAL RESPECTS

30. Persons who receive their health insurance through a private employer-sponsored benefit plan are typically participants or beneficiaries of plans governed by ERISA. Sometimes the ERISA Plans are fully insured by health insurers like Blue Cross, and sometimes they are self funded. In either case, the insurer "network" of healthcare services providers may be available to the ERISA Plans, but the insurers also process and pay benefits claims submitted by out-of-network providers.

31. When the ERISA Plan is administered by Blue Cross, Blue Cross is responsible for interpretation and application of the Plan terms, coverage and benefits decisions, appeals of coverage determinations, and processing of payments to benefits claimants such as Plaintiff. The Plan typically will enter into an "administrative services agreement" with its insurer to perform these administrative responsibilities, and Plaintiff is informed and believes that the administrative services agreement will typically delegate to the insurer the authority and responsibility to administer claims and make final benefits decisions based on claim procedures and standards that the insurer develops and utilizes from its own vast experience in claims handling. Plaintiff is informed and believes that, under its contracts, the insurer collects administrative services fees from the ERISA Plans, and has control over benefits determinations and the payment of benefits to healthcare services providers such as

Plaintiff.

32. The payment procedure for each of Plaintiff's claims typically begins with Plaintiff submitting to Blue Cross a standard industry billing form (usually form no. 1500). Blue Cross would then typically respond to the claim by sending a "Provider Explanation of Benefits" form (commonly known as an "EOB") which would set forth an analysis of the claim and the amount to be paid by the insurer. The EOB form would typically include either codes or narrative remarks which would supposedly explain the difference between the amount billed by Plaintiff and the amount to be paid by Blue Cross. However, in the present case, the EOBs submitted by Blue Cross to Plaintiff were woefully deficient in their purported explanations of benefit payment amounts. In practical effect, the EOBs in this case merely served as unintelligible repricing devices which reduced Plaintiff's payment amounts to a small fraction of the amounts billed, on the basis of no valid or descriptive analysis or explanation at all. Plaintiff is informed and believes that, among other things, the EOBs were deficient in that Blue Cross placed reliance on third-party "repricing" companies for purported analysis of UCR charges as a tool to reduce the payment due to the provider.

33. Plaintiff is informed and believes that Blue Cross utilized repricing companies to perform "repricing" for the benefit of Blue Cross. These "repricing" entities acted in a coordinated process with Blue Cross that was specifically designed and implemented to reduce the amounts Blue Cross would pay in response to medical services provider billing amounts - - irrespective of whether such "repricing" was justified or not. Plaintiff is informed and believes that the repricing entities are in the business of "repricing for profit", and that the core business purpose and central reason for corporate existence of these entities is to collect percentage contingency fee payments from Blue Cross that directly connect and correlate to the amount of "savings" that the repricing entity is able to generate through the use of their data analytics strategies. Plaintiff is informed and believes that these repricing companies

are financially interested parties in the claim "repricing" process and as such are inherently unreliable as service providers tasked with the responsibility of determining proper amounts due to service provider facilities such as Plaintiff. The "repricing" entities carry out their claim reductions in an arbitrary and capricious manner - - indeed, the 60%, 70%, 80%, and even 90% reduction amounts applied to Plaintiff's billings speak for themselves. These self interested entities are untrustworthy and are seeking to impose claim reductions in a manner that bears no meaningful relationship to the concepts of UCR and proper medical services billing as those concepts are legitimately understood and applied in the medical community and under applicable law. Blue Cross abused its discretion by placing undue reliance on "repricing" entities and, on information and belief, by utilizing billing reduction strategies premised on Medicare that have no place in a free market, private sector, healthcare billing environment.

## FIRST CAUSE OF ACTION

**Enforcement Under 29 U.S.C. §1132 (a)(1)(B) For Failure to Pay ERISA Plan Benefits and For Recovery of Reasonable Attorney's Fees and Costs Under 29 U.S.C. § 1132 (g)(1)**

34. The allegations of the prior paragraphs (paragraphs 1 - 33) of this Complaint are hereby incorporated by reference in this First Cause of Action as if fully set forth at length.

35. This cause of action is alleged by Plaintiff for relief in connection with claims for medical services rendered in connection with a healthcare benefits plans administered by Blue Cross.

36. Beverly Oaks seeks to recover benefits and enforce rights to benefits under 29 U.S.C. §1132 (a)(1)(B); and under 29 U.S.C. §1132 (g)(1) for recovery of reasonable attorney's fees and costs. Beverly Oaks has standing to pursue these claims as the assignee of member benefits. As the assignee of benefits, Plaintiff is a "beneficiary" entitled to collect benefits, and is the "claimant" for purposes of the

ERISA statute and regulations. ERISA authorizes actions under 29 U.S.C. § 1132(a)(1)(B) to be brought directly against Blue Cross as the party with actual control over the benefit and payment determinations with respect to Beverly Oaks' claims.

37. By reason of the foregoing, Beverly Oaks is entitled to recover ERISA benefits due and owing in an amount to be proven at trial, and Beverly Oaks seeks recovery of such benefits by way of the present action.

38. 29 U.S.C. § 1132 (g)(1) authorizes the Court to allow recovery of reasonable attorney's fees and costs incurred in this action. Beverly Oaks has incurred, and continues to incur, attorney's fees and costs in its pursuit of benefits, and is entitled to recover its reasonable attorney's fees and costs in an amount to be proven at trial.

WHEREFORE, Plaintiff prays for judgment against Blue Cross as follows:

**On the First Cause of Action**:

1. For damages against Blue Cross in an amount to be proven at trial in connection with the healthcare benefits claims in Exhibit B hereto and other such claims as may be added prior to trial of the action.

2. For interest at the applicable legal rate.

3. For reasonable attorney's fees and costs in an amount to be proven at trial.

**Dated:** March 27, 2017 Respectfully submitted,

**LYTTON & WILLIAMS LLP**

By: /s/ Richard D. Williams

Richard D. Williams,
Attorneys for Plaintiff Beverly Oaks
Physicians Surgical Center, LLC